IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **SHERI LEEUW,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-1771-L** |
| | § | |
| **KROGER TEXAS, L.P. d/b/a KROGER,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant's Motion for Summary Judgment (Doc. 26), filed October 14, 2020; Plaintiff's Motion to Dismiss Two of Her Claims ("Motion to Dismiss") (Doc. 31), filed November 4, 2020; Defendant's Objections to Plaintiff's Sham Affidavit (Doc. 42), filed March 3, 2021; and Plaintiff's Motion to Strike Defendant's Amended Reply to its Motion for Summary Judgment and Objections to Plaintiff's Sham Affidavit ("Motion to Strike") (Doc. 43), filed March 5, 2021.  After considering the parties' motions, briefs, evidence, record, and applicable law, the court **grants in part and denies as moot in part** Defendant's Motion for Summary Judgment (Doc. 26); **overrules** Defendant's Objection to Plaintiff's Affidavit (Doc. 42); and **denies** Plaintiff's Motion to Strike (Doc. 43).  Defendant's summary judgment motion (Doc. 26) is **granted** as to Plaintiff's premises liability and gross negligence claims and **denied as moot** as to Plaintiff's negligence claim.  Further, Plaintiff's Motion to Dismiss (Doc. 31) is **granted** with respect to her negligence claim and **denied** with respect to her gross negligence claim.

## I.    Factual and Procedural Background

Sheri Leeuw ("Plaintiff" or "Ms. Leeuw") originally brought this personal injury action against Kroger Texas, L.P. d/b/a Kroger ("Defendant" or "Kroger") in the 439th Judicial District

Court, Rockwall County, Texas, on July 8, 2019.  On July 25, 2019, the action was removed to federal court by Kroger based on diversity jurisdiction.  In her Original Petition, Ms. Leeuw asserts causes of action for negligence, gross negligence, and premises liability, and she seeks actual damages in the form of past and future medical expenses, pain and suffering, mental anguish, and disfigurement.  She also seeks lost wages, exemplary damages, prejudgment and postjudgment interest, and costs of court. Her claims arise from an injury she sustained while shopping at Kroger in Rockwall, Texas, on July 15, 2017, as a result of slipping on a stream of clear liquid on the floor near the fresh seafood and meat department of the store.  The parties agree that the clear liquid was water.  To keep from falling, Ms. Leeuw grabbed the arm of another customer who was standing next to her.  It is undisputed that no one actually saw the water on the floor or had actual notice of the water before Ms. Leeuw slipped.  Ms. Leeuw, nevertheless, contends that at least one store employee, and possibly two, who were working nearby, had constructive notice and should have been aware of the water on the floor before she slipped.  Kroger disagrees and maintains that Ms. Leeuw's premises liability claim fails for lack of actual or constructive notice.

On October 14, 2020, Kroger moved for summary judgment on all of Plaintiff's claims.  On November 4, 2020, Plaintiff filed her response to the summary judgment motion.  On the same date, she also moved to dismiss her negligence claim with prejudice and her gross negligence claim without prejudice pending further discovery.  Kroger opposed Plaintiff's request to dismiss her gross negligence claim without prejudice because it had already moved for summary judgment on all of her claims.  Kroger also objected to and moved to strike the affidavit submitted by Plaintiff in support of her response to its summary judgment motion.  Kroger contends that the affidavit is a "sham" affidavit that contradicts Plaintiff's prior deposition testimony in two material respects.  In response to Kroger's motion to strike and objections, Plaintiff disagreed that her affidavit

directly contradicted her deposition testimony and submitted a second affidavit in an attempt to clarify statements in her earlier affidavit. Kroger filed its reply in support of the objections and motion to strike on November 18, 2020.

After briefing on Defendant's summary judgment motion was complete, the court directed Plaintiff to file an amended summary judgment response and appendix that complied with the district's Local Civil Rules. Plaintiff filed her amended summary judgment response and appendix on March 3, 2021, to which Kroger filed an amended summary judgment reply and again objected to Plaintiff's affidavit on March 3, 2021, for essentially the same reasons. Plaintiff did not respond to Kroger's amended objections. On March 5, 2021, Plaintiff, instead, moved to strike Kroger's amended reply and objections. Briefing on Plaintiff's motion to strike was complete on March 11, 2021.

## II.     Analysis

Resolution of Plaintiff's Motion to Dismiss, Plaintiff's Motion to Strike, and Defendant's Motion to Strike or Objections to Plaintiff's summary judgment evidence will affect the court's ruling as to Defendant's Motion for Summary Judgment. Accordingly, the court addresses these motions before ruling on the summary judgment motion.

### A.     Plaintiff's Motion to Voluntarily Dismiss Negligence and Gross Negligence Claims Under Rule 41(a)(2)

Plaintiff moves, pursuant to Federal Rule of Civil Procedure 41(a)(2), to voluntarily dismiss her negligence claim (with prejudice) and gross negligence claim (without prejudice) after Kroger moved for summary judgment on all of her claims. Kroger is not opposed to Plaintiff dismissing her negligence claim with prejudice. Plaintiff's Motion to Dismiss her negligence claim with prejudice is, therefore, **granted**, and this claim is **dismissed with prejudice**. Kroger, however, contends that Plaintiff should not be allowed to dismiss her gross negligence claim

without prejudice at this late stage of the case.  Kroger contends that Plaintiff is attempting to avoid summary judgment on this claim for which she has no evidence, and she failed to address any of its summary judgment arguments regarding this claim.

Plaintiff disagrees and argues that, although she delayed in seeking to voluntarily dismiss her gross negligence claim until after Defendant moved for summary judgment, this is not necessarily a per se bar to the court allowing her to dismiss the claim without prejudice under Rule 41(a)(2).  Plaintiff contends that, generally, voluntary dismissal is appropriate and should be allowed even after the opposing party has moved for summary judgment, as long there is no evidence of bad faith and the defendant will not suffer clear legal prejudice as opposed to the mere inconvenience of having to defend against the dismissed claim in a later lawsuit.  Pl.'s Reply 1-2 (citing *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (quoting *McCants v. Ford Motor Co., Inc.*, 781 F.2d 855, 857 (11th Cir. 1986), and discussing *Durham v. Florida East Coast Ry. Co.*, 385 F.2d 366 (5th Cir. 1967)).

Federal Rule of Civil Procedure Rule 41(a) permits a plaintiff to voluntarily dismiss an action without a court order by: "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). "Unless the notice or stipulation states otherwise, dismissal under is without prejudice." Fed. R. Civ. P. 41(a)(1)(B).

Upon a plaintiff's request, the court can also dismiss an action by court order on terms that it considers proper. Fed. R. Civ. P. 41(a)(2). Unless otherwise specified, dismissal under this paragraph is without prejudice. *Id.* Ordinarily, a motion for voluntary dismissal "should be freely granted unless the non-moving party will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317 (5th Cir. 2002)

**Memorandum Opinion and Order – Page 4**

(citation omitted). "Whe[n] the plaintiff does not seek dismissal until a late stage and the defendants have exerted significant time and effort, the district court may, in its discretion, refuse to grant a voluntary dismissal." *Id.* at n.3 (quoting *Hartford Acc. & Indem. Co. v. Costa Lines Cargo Servs., Inc.*, 903 F.2d 352, 360 (5th Cir. 1990)).  Legal prejudice may also exist if the nonmovant could lose a forum non conveniens defense. *Ikospentakis v. Thalassic S.S. Agency*, 915 F.2d 176, 179 (5th Cir. 1990). Finally, legal prejudice may exist if "a plaintiff fails to seek dismissal until a late stage of trial, after the defendant has exerted significant time and effort." *Davis v. Huskipower Outdoor Equip. Co.*, 936 F.2d 193, 199 (5th Cir. 1991). Whether legal prejudice exists under these circumstances is a determination to be made by the court using its sound discretion. If the court determines that legal prejudice exists, it may "refuse to grant a voluntary dismissal." *Id.* (citations omitted). "[T]he mere prospect of a second lawsuit is not enough prejudice to a defendant to warrant denial of a motion to dismiss without prejudice." *United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003).  Alternatively, the court can "craft conditions that will cure the prejudice." *Elbaor*, 279 F.3d at 318.

Plaintiff explains that she is seeking to voluntarily dismiss without prejudice her gross negligence claim under Rule 41(a)(2) "because evidence may come to light during discovery that would support such a claim."  Pl.'s Mot. to Dismiss 1.  By its own terms, however, Rule 41 contemplates "Dismissal of Actions," not dismissal of only particular claims.  *See Swope v. Columbian Chems. Co.*, 281 F.3d 185, 192 & n.15 (5th Cir. 2002) (recognizing that "Rule 41(a) contemplates dismissal of an 'action' rather than a 'claim' or 'claims,'" and noting its prior refusal in *Exxon Corp. v. Maryland Casualty Co.*, 599 F.2d 659, 62-63 (5th Cir. 1979), "to permit a Rule 41(a) dismissal of a single claim against a defendant where other claims remain against that same

defendant.").[1]   The Fifth Circuit has also held that voluntary dismissal by a plaintiff under Rule 41(a)(1) of *one or more defendants in a multi-defendant case* is appropriate "in the early stages of a suit, before the defendant has expended time and effort in the preparation of his case."  *Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 255, 260 (5th Cir. 1973) (emphasis added).  Plaintiff, however, is not seeking to dismiss her entire action against Kroger, and this is not a multi-defendant case.  The cases she relies on are, therefore, distinguishable and her request is more appropriately considered to be a motion to amend her complaint.  *See Ryan*, 577 F.2d at 302 & n.2.

Even if Rule 41(a) were the proper vehicle for Plaintiff to seek dismissal without prejudice of her gross negligence claim, the court would deny her motion because she delayed until late in the case after Defendant exerted considerable time and effort in conducting discovery and moving for summary judgment on this claim.  *See Elbaor*, 279 F.3d at 317 & n.3 (citing *Costa Lines Cargo Servs., Inc.*, 903 F.2d at 360).  Moreover, allowing Plaintiff to avoid summary judgment on her gross negligence claim based on nothing more than her assertion that evidence supporting this claim "may come to light" would interfere with the court's ability to manage its docket and unnecessarily delay the resolution of this litigation through the piecemeal litigation of Plaintiff's claims in contravention of the court's scheduling orders.

Any intention on Plaintiff's part to reurge her gross negligence claim at some later point in this case after conducting additional discovery is problematic for additional reasons.  First, the discovery deadline and deadline for pleading amendments expired before Plaintiff filed her Motion

---

[1] The court in *Swope* also cited *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 302 & n.2 (5th Cir. 1978), *overruled on other grounds by Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980). *Ryan* explained in dicta that "Rule 41(a) speaks of dismissal of an action, and the plaintiff's elimination of a fragment of an action as was the case here is more appropriately considered to be an amendment to the complaint under Rule 15.") (citing 5 James W. Moore, *et al.*, Moore's Federal Practice, ¶ 41.06-1 (2d ed. 1977)).

to Dismiss and original response to Defendant's summary judgment motion, and she has not requested to extend either deadline or shown good cause under Rule 16(b) to further extend these deadlines.  Plaintiff also failed to seek a continuance under Rule 56(d) to conduct additional discovery before responding to Defendant's summary judgment motion, and she has not satisfied the requirements for such a continuance.

Second, as in her Motion to Dismiss, Plaintiff merely states in response to Defendant's summary judgment motion regarding her gross negligence claim that she "will dismiss this claim without prejudice at this time, because evidence may come to light during discovery to support such as claim." Pl.'s Am. Resp. 9.  Such response, however, amounts to a waiver or abandonment of her gross negligence claim and the summary judgment arguments raised by Defendant for failure to defend this claim and failure to respond to Defendant's summary judgment contentions regarding this claim.  *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss); *see also Nichols v. Enterasys Networks, Inc*., 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (explaining that a plaintiff, "in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue"); *Kellam v. Servs*., No. 3:12-cv-352-O, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom., Kellam v. Metrocare Servs*., 560 F. App'x 360 (5th Cir. 2014) (citations omitted).

Further, Plaintiff cannot use Rule 41(a)(2) to voluntarily dismiss without prejudice her gross negligence claim subject to reurging it later in this case as an end-run around the deadlines

in the court's scheduling order or the requirements of Rule 56(d) and Rule 16(b).  As the court has determined that Plaintiff waived or abandoned her gross negligence claim, Defendant is entitled to judgment as a matter of law on this claim as a result of Plaintiff's failure to raise a genuine dispute of material fact.  Accordingly, the court **grants** Defendant's summary judgment motion as to Plaintiff's gross negligence claim; **dismisses with prejudice** the claim; and **denies** Plaintiff's Motion to Dismiss this claim.

### B.    Motions to Strike and Objections to Summary Judgment Evidence

### 1.    Plaintiff's Motion to Strike

Plaintiff moves to strike Defendant's Amended Reply and Objections (Doc. 42) that Kroger filed one day after she amended her summary judgment response and appendix in accordance with the court's February 23, 2021 Order.

In this order, the court noted that Plaintiff's appendix was not numbered sequentially, and Plaintiff's response cited to exhibits and documents within exhibits rather than the pages of her appendix as required by this district's Local Civil Rules.  The court, therefore, directed Plaintiff to file an amended response and appendix that cured only these deficiencies without making any other changes.

Plaintiff contends that Defendant's amended reply and objections to her affidavit include the following three sentences that were not included in Defendant's original reply and motion to strike Plaintiff's affidavit:

> Plaintiff then takes the sham statements and concludes this means the condition at issue must have existed even longer than ten minutes. . . . Notably, Plaintiff does not dispute that she testified she could have been in the store as little as five minutes. Plus, any attempt to equivocate and claim that she means "'about' ten minutes," would do nothing to exonerate her from her direct contradictions as to how long she was in the store.

Def.'s Am. Summ. J. Reply & Obj. 3-4 (Doc. 42).  Plaintiff asserts that she complied with the court's order and did not make any substantive changes to her summary judgment response. Plaintiff, therefore, argues that Defendant was not entitled to file an amended reply, without leave of court, that includes substantive arguments not included in its original reply and motion to strike her affidavit.  For the same reason, Plaintiff contends that the amended reply is untimely under Local Rule 7.1(f).

As correctly noted by Kroger, the court's order did not specify whether it could file an amended reply and objections, and Local Rule 7.1(f) simply sets forth the time for filing reply briefs within 14 days from the date the response is filed.  Thus, Kroger did not technically violate the court's order or Local Rule 7.1(f).   On the other hand, Plaintiff's amended appendix includes additional deposition pages, in contravention of the court's order, that were not included in her original appendix.

Generally, arguments made for the first time in a reply are not appropriate for consideration.  *Perez v. Bruister*, 823 F.3d 250, 273 n.31 (5th Cir. 2016) ("This court will not consider arguments raised for the first time in a reply brief.") (citing *Wright v. Excel Paralubes*, 807 F.3d 730, 736 (5th Cir. 2015)).  While the three sentences at issue in Defendant's amended reply were not included in its original reply, they add nothing substantive to Defendant's prior argument—that Plaintiff's affidavit is a "sham" affidavit and should not be considered in ruling on its summary judgment motion because, among other things, the affidavit includes statements that contradict her prior deposition testimony regarding the total amount of time she was inside the Kroger store before she slipped—an issue that goes to the heart of whether the water was on the floor long enough to constitute constructive notice.  The court, therefore, disagrees that these three sentences qualify as a new argument or arguments.  Even assuming, as Plaintiff contends,

that these three sentences constitute new substantive arguments or objections, Plaintiff had the opportunity to respond to Defendant's amended objections regarding her affidavit but chose, instead, to stand on her earlier November 17, 2020 response (Doc. 33) to Defendant's original objections in which she submitted a second affidavit (Doc. 33-2), dated November 17, 2020, in an attempt to clarify certain statements contained in her earlier November 4, 2020 affidavit.

Regardless of whether the court considers the three additional sentences in Defendant's amended reply, they would not affect the court's analysis or ruling on Defendant's summary judgment motion as to Plaintiff's premises liability claim.  Accordingly, for all of these reasons, the court **denies** Plaintiff's Motion to Strike (Doc. 43).

### 2.   Kroger's Summary Judgment Objections

The court turns next to Defendant's objections to Plaintiff's affidavit on the ground that it is a "sham affidavit" in that certain statements contradict her deposition testimony. The "sham affidavit" doctrine precludes a party from "defeat[ing] a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (footnote and citations omitted). "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *Id*. at 496 (citation omitted). An affidavit, however, cannot be not used to contradict sworn deposition testimony. *Id.*

Kroger contends that statements in Ms. Leeuw's affidavit (Pl.'s Am. Summ. J. Resp. App. 37-39) directly contradict her deposition testimony in two respects regarding: (1) the amount of time she was inside the store before slipping; and (2) whether anyone else was in or passed through the area where she slipped during the entire time that she was in the seafood department.  For the reasons that follow, the court **denies** Kroger's motion to strike, **overrules** its objections to Ms.

Leeuw's affidavit, and declines to strike the statements in Ms. Leeuw's affidavit that are the subject of Kroger's objections and based on the "sham affidavit" doctrine.

### a. Affidavit Statements—Time Spent in Kroger Seafood Department Before Slipping

Kroger first asserts, and it is undisputed that, when initially asked in her deposition, Plaintiff could not remember how long she had been inside the store before the incident occurred. Kroger also asserts, and it is undisputed that, when Plaintiff was then asked whether she could estimate the amount of time she had been inside the store before she slipped on the water in front of the fresh seafood/meat department, she responded "[t]en minutes, five minutes."  Def.'s Am. Summ. J. Reply 2 (citing Def.'s Summ. J. App. 6 & quoting Pl.'s Dep. 28).  Kroger notes that Plaintiff also testified that she may have done some shopping in the produce section before the incident in the fresh seafood department.  This too is undisputed.  From this, Kroger contends that the statements in Plaintiff's affidavit, that she was in the seafood department a full ten minutes searching for shrimp before slipping, directly contradict her deposition testimony that:

> 1) she does not remember how long she was in the store; (2) she could have been in the store a little as five minutes; and (3) during the short amount of time she was in the store, she possibly did some shopping in the produce department (thereby further reducing the amount of time she could have been in the seafood department).

Def.'s Am. Summ. J. Reply 3-4.

As noted, Plaintiff did not respond to Defendant's amended objections and, instead, chose to stand on her prior response to Defendant's original objections to her affidavit.  In her original response, Plaintiff asserts that the statement in her affidavit that—"I was at the back corridor of the store *for about ten minutes* before I slipped on the water on the floor"—is not "so markedly inconsistent" with her deposition testimony in which she "estimated" that she was in the store for 10 minutes before the incident occurred as to constitute an "obvious sham."  Pl.'s Resp. 3 (quoting

*Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019)).  Plaintiff contends that, while Defendant focuses on the five-minute estimate she gave in her deposition, this ignores that she also estimated that she could have been in the store as long as ten minutes before slipping.  Plaintiff further contends, while Defendant suggests that her "picking up something in the produce section would have reduced the amount of time she was in the seafood section by some indeterminate amount" of time, it is also possible that, if she did pick up something while walking through the produce section, it took only a matter of seconds and had no effect on the amount of time she was in the area near the fresh seafood counter before slipping.

Kroger replies that, while Plaintiff points to paragraph four of her affidavit in which she states that she was in the back corridor of the store for "about" ten minutes, she states four times in paragraphs five and six that she was in the back corridor precisely ten minutes, not "about" ten minutes.  Kroger asserts that Plaintiff then extrapolates from these unequivocal statements by arguing in her summary judgment response that:

> Because Plaintiff did not see anyone passing through this area ***for the ten minutes she was at the back corridor of the store*** before she slipped, this is circumstantial evidence ***that the water had been there at least a bit longer than the ten minutes*** that Plaintiff observed the area as she walked along the back corridor of the store.

Def.'s Am. Summ. J. Reply 1-2 (Doc. 32) (quoting Pl.'s Am. Summ. J. Resp. 8).  In addition, Kroger notes that Plaintiff does not dispute that she testified in her deposition that she could have been in the store as little as five minutes.

While somewhat inconsistent with her deposition testimony, Plaintiff's affidavit statements that she was in the back corridor of the store for about ten minutes or a full ten minutes is not "so markedly inconsistent" with her prior deposition testimony to "constitute an obvious sham." *Winzer*, 916 F.3d at 472 (citations omitted).  As explained by the court in *Winzer*:

> [N]ot "every discrepancy" in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence. Generally, "[i]n considering a motion for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier" statement. "In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made" earlier.

*Id.* at 472 (citations omitted).  If Plaintiff had only testified in her deposition that she did not know how long the water was on the floor and did not know how long she was in the store before she slipped, the situation would be different.  Plaintiff, however, was also asked by defense counsel whether she could *estimate* the length of time she was in the store before slipping, to which she *estimated* and responded, "Ten minutes, five minutes." Also, when asked, Plaintiff did not commit to spending any amount of time in other parts of the store before falling.  Thus, as her deposition testimony was merely an estimate, which is not obviously dissimilar from her affidavit statements that she was in the back corridor about ten minutes or ten minutes, there is no direct contradiction of the kind required to disregard testimony under the sham affidavit doctrine.  *See id.* at 472. The court, therefore, agrees with Plaintiff that application of the sham affidavit doctrine to exclude the statements in her affidavit regarding the amount of time she was in the back corridor of the store in ruling on Kroger's summary judgment motion is not appropriate.

### b.      Affidavit Statements—Presence of Others Near Water

Kroger also takes issue with the statement in Plaintiff's affidavit that "[i]f someone had been in that area during those ten minutes[,] I would have seen and noticed them. During those ten minutes[,] I saw no other person pass through that area where there was water on the floor." Def.'s Am. Summ. J. Reply 4 (Doc. 42) (quoting Pl.'s Am. Summ. J. Resp. App. 38).  Kroger contends that these two sentences in Plaintiff's affidavit directly contradict her deposition testimony that a gentleman was close enough for her to grab his arm to keep her from falling and, indeed, the

gentlemen was with his wife.  Kroger, therefore, asserts that, according to Plaintiff's deposition testimony, there were at least two other customers in the immediate area, which is inconsistent with the statements in her affidavit.

Plaintiff responds that her deposition testimony about the man whose arm she grabbed and his wife who were standing nearby when she slipped is not inconsistent with the statement in her affidavit that she saw *no one pass through* the area where there was water on the floor before she slipped.  In an attempt to clarify that this is what she meant to say in her affidavit, Plaintiff submitted a "Second Affidavit" in support of her summary judgment response, which she contends makes this point even more clear.

As a preliminary matter, the court cannot consider Plaintiff's Second Affidavit that was submitted without leave of court after the expiration of her deadline for responding to Defendant's summary judgment motion and coming forward with evidence to raise a genuine dispute of material fact. The court, therefore, **strikes** Plaintiff's Second Affidavit (Doc. 33-2) and does not consider it in ruling on Defendant's summary judgment motion.

The court, nevertheless, agrees with Plaintiff that her statement that she saw *no one pass through* the area where the water was on the floor before she slipped is not necessarily inconsistent with her deposition testimony that she grabbed the arm of the man who was standing nearby with his wife with their backs to her when she slipped.  That these people or others were nearby when she slipped does not mean they also must have passed through the area where the water was on the floor.  Thus, there is no direct inconsistency in this regard that would warrant striking Plaintiff's statement that she saw no one pass through the area where the water was on the floor before she slipped.

**Memorandum Opinion and Order – Page 14**

Likewise, Plaintiff's other statement that, "[i]f someone had been in that area during those ten minutes[,] I would have seen and noticed them," is not inconsistent with her deposition testimony regarding the two nearby customers.  While poorly worded and slightly confusing in light of another statement in her affidavit that two men were working nearby within four to six feet of the water, it does not directly conflict with and is not inconsistent with her deposition testimony because Plaintiff does not actually say in this statement that she saw no one (store customers or employees) in the area near the water.  Instead, she merely states that, *if* anyone had been in that area, she would have noticed them.  Additionally, it is clear from Plaintiff's response to this objection and the other statements in her affidavit that she does not dispute that other persons were nearby when she fell.  Accordingly, Defendant's objection to this statement is similarly flawed.

As explained in the next section, however, consideration of Ms. Leeuw's affidavit and the other evidence she relies on in response to Defendant's summary judgment motion are insufficient to establish a genuine dispute of material fact as to whether Kroger had constructive notice of the water on the floor as required to prevail on a premises liability claim under Texas law.

### C.    Defendant's Motion for Summary Judgment

As a result of the court's rulings, only Plaintiff's premises liability claim and the parties' contentions regarding this claim remain.  The court's remaining summary judgment analysis, therefore, focuses on this claim.

### 1.    Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine"

if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587. (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### 2.    Premises Liability Claim Based on Constructive Notice

In Texas, a premises owner, or person in control of the premises, owes its invitees a duty to exercise reasonable care to protect them from dangerous premises conditions that were known or reasonably discoverable, but a premises owner is not an insurer of its invitees' safety. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002) (citing *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998)). To prevail on a premises liability claim under Texas law, a plaintiff must prove:

(1)    Actual or constructive knowledge of some condition on the premises by the owner/operator;

(2)    That the condition posed an unreasonable risk of harm;

(3)    That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4)    That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Gonzalez*, 968 S.W.2d at 936 (citing *Keetch v. Kroger Co*., 845 S.W.2d 262, 264 (Tex. 1992)). Resolution of Defendant's summary judgment motion as to Plaintiff's premises liability claim turns on the first knowledge element.  Kroger contends that there is no evidence it had actual or constructive knowledge of the condition that caused Plaintiff to slip.

There are three ways that a plaintiff can establish a premises owner's knowledge of a potentially harmful condition: (1) proof that the defendant or its "employees caused the harmful condition"; (2) proof that the defendant or its "employees either saw or were told of the harmful condition" before the plaintiff's injury; or (3) "proof that the harmful condition was present for so long that it should have been discovered in the exercise of reasonable care."  *Threlkeld v. Total Petroleum, Inc*., 211 F.3d 887, 892 (5th Cir. 2000) (citing *Keetch*, 845 S.W.2d at 264); *see also Reece*, 81 S.W.3d at 814-15.

Plaintiff does not address Kroger's contention that there is no evidence it had actual notice of the condition, and there is no evidence that Kroger caused the condition or actually knew of the condition.  Plaintiff, instead, contends that there is sufficient evidence to raise a genuine dispute of material fact "as to whether Defendant should have known (constructive notice) of the water on the floor."  Pl.'s Am. Summ. J. Resp. 9.  Plaintiff's constructive notice argument implicates the third scenario for establishing a defendant's knowledge of the presence of the water. *See Threlkeld*, 211 F.3d at 892.  The court's analysis, therefore, focuses on whether Kroger had constructive notice of the condition.

Constructive knowledge "requires proof that an owner had a reasonable opportunity to discover the defect." *Robbins v. Sam's East, Inc*., 2021 WL 3713543, at *2 (5th Cir. Aug. 20, 2021) (per curiam) (quoting *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006)). In *Robbins*, the Fifth Circuit explained that resolution of this issue:

**Memorandum Opinion and Order – Page 18**

requires analyzing "the combination of proximity, conspicuity, and longevity"—
that is, courts examine the proximity of the premises owner's employees to the
hazard, the conspicuousness of the hazard, and how long the hazard was in place.
*Id.* at 567-68. For instance, if a dangerous condition is conspicuous as "a large
puddle of dark liquid on a light floor would likely be, then an employee's proximity
to the condition might shorten the time in which a jury could find that the premises
owner should reasonably have discovered it." *Reece*, 81 S.W.3d at 816. Or "if an
employee was in close proximity to a less conspicuous hazard for a continuous and
significant period of time, that too could affect the jury's consideration of whether
the premises owner should have become aware of the dangerous condition." *Id.*
"What constitutes a reasonable time for a premises owner to discover a dangerous
condition will, of course, vary depending upon the facts and circumstances
presented." *Id.*

*Robbins*, 2021 WL 3713543, at *2.

In *Wal-Mart Stores, Inc. v. Gonzalez*, the Texas Supreme Court addressed "what quantum
of circumstantial evidence is legally sufficient to support a finding that an unreasonably dangerous
condition has existed long enough to charge a proprietor with constructive notice of the condition"
and concluded that, when, as in this case, a plaintiff relies on circumstantial evidence to establish
the defendant's constructive knowledge of a dangerous condition, the evidence "must establish
that it is more likely than not that the dangerous condition existed long enough to give the
proprietor a reasonable opportunity to discover the condition." *Threlkeld*, 211 F.3d at 892 (quoting
*Gonzalez*, 968 S.W.2d at 935-366). "[M]eager circumstantial evidence from which equally
plausible but opposite inferences may be drawn is speculative and thus legally insufficient" to
support such a finding and amounts to "no evidence" that a defendant had constructive knowledge
of a dangerous condition. *Threlkeld*, 211 F.3d at 894 (quoting *Gonzalez*, 968 S.W.2d at 936). The
"harsh reality," according to the Texas Supreme Court in *Gonzalez* is that, "if a plaintiff cannot
prove facts to establish that it is more likely than not that the dangerous condition existed long
enough that a proprietor should have known of its presence, there is simply no basis for recovery."
*Threlkeld*, 211 F.3d at 893 (citing *Gonzalez*, 968 S.W.2d at 938). Thus, if "a plaintiff's evidence

establishes only the possibility that a dangerous condition was present long enough to provide constructive notice, such evidence is legally insufficient." *Threlkeld*, 211 F.3d at 893.

Kroger contends that Plaintiff conceded in her deposition that she had no evidence that it had constructive notice of the water on the floor.  In this regard, Kroger asserts that Plaintiff admitted that no Kroger employee was aware of the water before she slipped; nothing indicates that the condition existed long enough that Kroger reasonably should have known about it before she slipped; and Plaintiff admitted in her deposition that she had no evidence to show how long the water was on the floor before she slipped.  Kroger further asserts that Plaintiff's deposition testimony that at least two male employees were in the area where she slipped is insufficient to raise a genuine dispute of material fact as to whether they or it should have known the water was on the floor before she slipped.  Kroger contends that Plaintiff admitted that she did not know whether the man providing wine tastings was a Kroger employee.  Kroger contends that Plaintiff also admitted to not knowing whether either of the men knew that the water was on the floor before she slipped, and temporal proximity is not enough without evidence of how long the water was on the floor.  Kroger, therefore, argues that it is entitled to judgment on Plaintiff's premises liability claims because she "has no evidence Kroger knew or should have known of the water on the floor, [and] she has failed to make the required threshold showing" as necessary for establishing constructive notice of the alleged condition.  Def.'s Summ. J. Br. 17.

Plaintiff characterizes Defendant's summary judgment argument as being limited to how long the water was on the floor:  "Defendant's sole argument on Plaintiff's premise liability claim is that Plaintiff has no evidence of how long the dangerous condition in this case—water on the

floor—existed before Plaintiff slipped on it."[2]  Pl.'s Am. Summ. J. Resp. 7.  Regarding this argument, Plaintiff responds that, contrary to Defendant's assertion, she has pointed to evidence that shows "the water had been on the floor for about ten minutes before [she] slipped on it."  *Id.* For support, she relies heavily on her affidavit in which she states that: (1) she was in the seafood department in the corridor of the store for "about ten minutes" before she slipped; (2) during that entire time, she had an unobstructed view of the area where she slipped, she saw no one else pass through that area, she did not see the water on the floor before she slipped; and (3) she saw two men working four to six feet away from the water when she slipped (one was serving wine, the other "checklist boy" was working at the seafood area) and the water was within their "field of vision."  Pl.'s Am. Summ. J. Resp. App. 37-39.

In addition, she relies on the deposition testimony of Kroger employees Karen Hopson and Anthony James Florent to show that: (1) there were no safety cones or other warnings in the area where she slipped; (2) Kroger recognizes that water on the floor is a dangerous condition and has a "policy to constantly monitor their floor situation"; (3) a mark or marks on the floor near the area where Plaintiff slipped indicate that wheels from a shopper cart could have "[gone] through there"; and (4) the area where Plaintiff slipped is a main public corridor of the store.  Pl.'s Am. Summ. J. Resp. 7-8.  Plaintiff contends that this evidence supports her argument that the water was on the floor at least ten minutes before she slipped, and that ten minutes was more than sufficient time for Kroger to discover the water if it had acted with reasonable care.

That the parties dispute how long the water was on the floor before Plaintiff slipped is clear from their summary judgment briefs and related objections.  Based on her affidavit of how long

---

[2] The court disagrees that Defendant's constructive notice argument is limited to how long the water was on the floor. Moreover, as noted herein, even Plaintiff recognizes that the issue is whether, based on the circumstances of this case and evidence, ten minutes was sufficient time for Kroger to discover the water before Plaintiff slipped.

**Memorandum Opinion and Order – Page 21**

she was in the back corridor of the store before she slipped, Plaintiff contends that the water was on the floor "about ten minutes," "at least ten minutes," or "a bit longer than ten minutes" before she slipped.  *Id*. at 8-9.  Defendant, on the other hand, contends based on Plaintiff's deposition testimony that the water could have been on the floor for as little as five minutes, which it asserts is insufficient as a matter of law to impute constructive notice.  *See* Def.'s Am. Summ. J. Reply 6-7 & nn.15, 18 (citing cases).

Even assuming that the water was on the floor ten minutes or "a bit longer" as Plaintiff urges, such evidence is legally insufficient based on the facts of this case to raise a genuine dispute of material fact regarding Kroger's constructive knowledge.  The dangerous conduction must have "existed for some length of time" for a premises owner like Kroger to be charged with constructive notice or knowledge.  *Reece*, 81 S.W.3d at 815.  Regarding this requirement, the Fifth Circuit noted in *Robbins v. Sam's East, Incorporated* that "an inconspicuous condition that has existed for longer than ten minutes has been considered to be legally insufficient to show constructive knowledge."  2021 WL 3713543, at *2 (explaining that "the ten minutes during which the inconspicuous fruit was on the floor did not afford . . . employees a reasonable time to discover and remove the hazard.").  As examples, *Robbins* quoted *Shirey v. Wal-Mart Stores Texas, LLC*, 699 F. App'x 427, 429 (5th Cir. 2017), as follows: "[T]he seventeen minutes during which the inconspicuous grape was on the floor did not afford Wal-Mart a reasonable time to discover and remove the hazard."  *Robbins*, 2021 WL 3713543, at *2.  *Robbins* also cited *Brookshire Food Stores, LLC v. Allen*, 93 S.W.3d 897, 901 (Tex. App.—Texarkana 2002, no pet.), and noted the court's conclusion that "evidence indicating grapes were not on [the] floor for longer than fifteen minutes, and no one saw grapes on [the] floor before customer fell, was legally insufficient to show constructive knowledge."  *Robbins*, 2021 WL 3713543, at *2.

Here, there is no evidence that the liquid on the floor was conspicuous.  According to Plaintiff's deposition, the substance on the floor was a "clear"[3] liquid that Plaintiff believed was water.  The condition did not consist of a large puddle of water that would have been obvious to passers-by or persons working nearby.  Rather, Plaintiff described the condition as a "strip" or "stream" of water.  Def.'s Summ. J. App. 9.  According to the photo taken by Plaintiff after she slipped, the strip of water appears to have been no more than one half or one inch wide that was strewn or dribbled in a straight line across an area of no more than two feet in length.  There is no evidence of how the water came to be on the floor, Plaintiff admitted to not seeing the water before she slipped, even though she was in that area or in close proximity for approximately ten minutes, and she had a "continuous line of sight to the area where the water was on the floor" the entire time.  Pl.'s Am. Summ. J. Resp. App. 38.

There is also no evidence that anyone else saw the water on the floor before Plaintiff slipped despite their close proximity.  The two other customers were close enough for Plaintiff to grab the arm of one of them when she slipped.   Plaintiff states in her affidavit that the two men working nearby were only four to six feet away from where she slipped.  Plaintiff contends that, like her, both of these men "had a clear view of the water on the floor," and points to her affidavit in which she states that "[t]he water was within both of these men's field of vision."  Pl.'s Am. Summ. J. Resp. 3; Pl.'s Am. Summ. J. Resp. App. 39.

From this, Plaintiff appears to suggest that the two men could have or should have seen the water on the floor before she slipped because they had an unobstructed view of the area where the water was located.  Plaintiff, however, does not address Kroger's argument regarding the lack of evidence regarding the employment status of the man providing wine tastings that would allow the

---

[3] Def.'s Summ. J. App. 19.

**Memorandum Opinion and Order – Page 23**

court to attribute any knowledge on his part to Kroger.  Additionally, even if the area where Plaintiff slipped was within the checklist boy's field of vision, Plaintiff admitted in her deposition that she did not know for certain whether he saw the water before she slipped, and she points to no evidence that he ever looked in the direction of where the water was on the floor in the ten minutes before she slipped.  Absent such evidence, any contention by Plaintiff that the checklist boy must have or should have seen the water during the ten minutes before she slipped it was on the floor is based on nothing more than "pure speculation" and conjecture.  *See Spates*, 186 S.W.3d at 568.

In *Spates*, the Texas Supreme Court rejected the plaintiff's argument that Wal-Mart had constructive notice of a six-pack beverage ring resting on the floor "directly behind" a Wal-Mart employee for 30 to 45 seconds. The court explained that, to find constructive notice,

> jurors would have to find the employee should have noticed the plastic ring behind her. Had there been evidence it had been on the floor for an extended period of time, reasonable jurors might assume that the employee should have seen it *unless she sidled into the aisle or never took her eyes off the shelves. But on this record, that would be pure speculation.*

*Spates*, 186 S.W.3d 566 at 568 (emphasis added).

As in *Spate*, there is no evidence in this case that the checklist boy ever looked away from what he was doing in the direction of where Plaintiff slipped, and Plaintiff admitted in her deposition that she did not know whether he was looking in her direction when she slipped. Plaintiff, nevertheless, expressed the opinion that he must have seen the water on the floor before then because there were no displays obstructing his view, and he had to pass by the area to get to that corner of the store.  Plaintiff, however, conceded in her deposition that she did not know for certain whether he saw the water before she slipped.  She also acknowledged that the checklist boy might not have seen the water whether he was not paying attention.  Plaintiff states in her affidavit

that she saw no one pass through the area where she slipped in the ten minutes she was in that back corridor, but this further undermines her subjective belief that the checklist boy must have seen the water when he passed by the area. This is so because there is no indication of when he passed by the area prior to that ten-minute period or whether the water was on the floor at that time. Plaintiff also fails to explain why she believes the checklist boy should have seen or discovered the water during the ten minutes before she slipped when she and the two other customers standing right next to the water did not see it even though Plaintiff states in her affidavit that she also had an unobstructed view of the same area for ten minutes. Thus, any suggestion by Plaintiff that the checklist boy should have seen the water before she slipped amounts to no more than speculation.

The deposition testimony of Ms. Hopson and Mr. Florent[4] does not assist Plaintiff in meeting her burden of establishing that it is more likely than not that the condition (a strip of water on the floor) existed long enough that Kroger should have discovered it.  The lack of safety cones or other warnings in the area where Plaintiff slipped suggests the contrary—that Kroger was not aware of the water—and there is no evidence that shows it should have been aware of the water. Likewise, absent evidence that Kroger should have known that the area was prone to spills or unreasonably dangerous, particularly in the absence of any evidence regarding prior accidents that would have put it on notice of the allegedly dangerous condition, Mr. Florent's concession that the area where Plaintiff slipped is a main corridor in the store, and that water on the floor is a dangerous condition are insufficient.

---

[4] Plaintiff asserts in her summary judgment response that Mr. Florent was employed as Kroger's assistant store manager, and Ms. Hopson was employed as Kroger's assistant store leader, but it is unclear whether they had these titles at the time of their depositions, the incident, or both.  It is also unclear from the deposition testimony in Plaintiffs' amended appendix whether it is Mr. Florent or Ms. Hopson who was deposed or whether they had the titles attributed to them by Plaintiff. According to Plaintiff's other evidence, these persons were identified merely as "Kroger employee[s]." *See* Pl.'s Am. Summ. J. Resp. App. 51.

Plaintiff's reliance on Ms. Hopson's testimony—"Okay. It could be"—in response to the question of whether she saw the "kind of mark there" in Plaintiff's photo of the water and whether it appeared to her "like the wheels of a shopping cart went through there"[5] fares no better in establishing that it is *more likely than not* that the condition, a relatively small amount of inconspicuous clear liquid or water on the floor, existed long enough to give Kroger a reasonable opportunity to discover it (constructive notice).  Like Plaintiff's other evidence, Ms. Hopson's qualified response to counsel's suggestion that the mark in the photo *could have* been made by a shopping cart's wheel is pure speculation and insufficient to support a finding of constructive knowledge.  This is so particularly considering Ms. Hopson's lack of personal knowledge, as she was not present before or after Plaintiff slipped, there is no evidence she was aware of the water on the floor, and it is just as likely that the "mark" on the floor was made by Plaintiff when she slipped.  *See Garcia v. Wal-Mart Stores Texas, LLC*, 893 F.3d 278, 281 (5th Cir. 2018) (explaining that a plaintiff must demonstrate that the circumstantial evidence "is sufficiently non-speculative to create a fact issue."); *see also Gonzalez*, 968 S.W.2d at 936 (concluding that "meager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative" and, therefore, legally insufficient to support a finding of constructive knowledge).

Finally, Plaintiff points to evidence that Kroger has or, at the time, had a "policy to constantly monitor their floor situation." Pl.'s Am. Summ. J. Resp. 5 (citing Pl.'s Am. Summ. J. Resp. App. 43).  Contrary to Plaintiff's assertion, Ms. Hopson did not testify that Kroger had a "policy" of constantly monitoring its floors.  In response to a question about Kroger's "safety training for slip and falls," Ms. Hopson testified that, "We *try* to avoid slip and falls by constantly monitoring our floor situation. We *try* to be abreast of anything that could compromise associates

---

[5] Pl.'s Am. Summ. J. Resp. 5 (citing Pl.'s Am. Summ. J. Resp. App. 42, 44-45).

**Memorandum Opinion and Order – Page 26**

or customer safety. Anytime there [are] things that could cause an injury, we *try* to address it as quickly as possible **as soon as we're aware**." *Id.* (emphasis added).  Mr. Florent similarly testified that Kroger trains its employees to "clean up water **when it's on the floor**," which implies that employees would first need to know water was on the floor before being able to clean it up.  *Id.* at 70 (emphasis added). There is no evidence in this case, however, that Kroger or its employees were aware of the water on the floor before Plaintiff slipped. *See Reece*, 81 S.W.3d at 817 (finding evidence of Wal-Mart's store policy that required employees to keep their assigned areas free from known hazard's immaterial because there was no evidence that the hazard at issue was known).

Ms. Hopson further testified that Kroger had a "policy" of having a utility clerk conduct "hourly store sweeps where they try to encompass the whole building, indoor[s] and outdoor[s], to be able to make sure that there's no debris, there's no issues that would cause any injury." Pl.'s Am. Summ. J. Resp. App. 43.  This evidence, though, is of limited or no value, as it does not assist the court's overall analysis in assessing the "the combination of proximity, conspicuity, and longevity" of the condition on the floor because it is not clear from the evidence whether hourly sweeps were done by Kroger's utility clerk on the day in question and, if so, when the last sweep was done before Ms. Leeuw slipped.  There is also no evidence that would have led the utility clerk to believe that this area of the store required more attention than others because water spills were more likely.

Accordingly, for all of these reasons, the court determines that, considering the evidence in the light most favorable to Plaintiff, there is insufficient competent summary judgment evidence to raise a genuine dispute of material fact as to whether Kroger had constructive knowledge of the water on the floor near the seafood department before Ms. Leeuw slipped.  Kroger is, therefore,

entitled to judgment as a matter of law on Plaintiff's premises liability claim, which the court **dismisses with prejudice**.

III.    **Conclusion**

For the reasons explained, the court **grants in part and denies as moot in part** Defendant's Motion for Summary Judgment (Doc. 26); **overrules** Defendant's Objection to Plaintiff's Affidavit (Doc. 42); and **denies** Plaintiff's Motion to Strike (Doc. 43).   Defendant's summary judgment motion (Doc. 26) is **granted** as to Plaintiff's premises liability and gross negligence claims and **denied as moot** as to Plaintiff's negligence claim.   Further, Plaintiff's Motion to Dismiss (Doc. 31) is **granted** with respect to her negligence claim and **denied** with respect to her gross negligence claim.   As a result of the court's rulings, all claims asserted by Plaintiff in this case for premises liability, negligence, and gross negligence under Texas law are **dismissed with prejudice**.   As no claims remain, judgment will issue by separate document in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**It is so ordered** this 21st day of September, 2021.

_Sam A. Lindsay_
Sam A. Lindsay
United States District Judge